THE PEOPLE *ex rel.* TALLANT *et al. v.* WOODS.

The act of 1851, creating the board of fund commissioners of San Francisco, was a law authorizing a contract between the city and her creditors, who surrendered the old indebtedness and took a new security, bearing a different rate of interest. This transaction was in the nature of a new contract, and the law authorizing it entered into and became part thereof, and cannot be altered or amended so as to impair or destroy the rights of parties under the contract.

The provisions of the Consolidation Act of 1856, requiring that the sinking fund created by the act of 1851 should be first exhausted by the redemption of certificates of stock, before the treasurer should make payment annually of the sum of fifty thousand dollars, set apart by the first act for the paymemt of interest and for the sinking fund, are unconstitutional.

APPEAL from the District Court of the Fourth Judicial District, County of San Francisco.

This was an application by the relators, as members of the board of commissioners of the funded debt of the city of San Francisco, against R. E. Woods, treasurer of the city and county of San Francisco, to compel him to pay over to them the sum of eighty-nine thousand nine hundred dollars, as the balance of interest on the funded debt, and of the fifty thousand dollars for the sinking fund. Their petition averred, that in conformity with the law of 1851, under which they organized, they furnished the city assessors, on the seventeenth of July, 1856, with a written statement of the amount necessary to be raised for the payment of the interest of the funded debt for the current fiscal year, and also added the sum of fifty thousand dollars for a sinking fund, in comformity with the fourth section of the law of 1851; that the amount certified, including the fifty thousand dollars, was one hundred and ninety-nine thousand nine hundred dollars; that there had been received by the defendant, as treasurer, from taxes collected on the last assessment applicable to

their fund, upwards of two hundred thousand dollars; that he had only paid them the sum of one hundred and ten thousand dollars, and refused to pay the remainder, on the ground that it was otherwise appropriated. Their petition further averred that, in conformity with the law of 1851, they had issued bonds to the amount of one million five hundred thousand dollars, which were held by various parties in this State, the Atlantic States, and in Europe; that the bonds were for five hundred dollars and one thousand dollars each, and bore interest at the rate of ten per cent. per annum, which was payable semi-annually in the city of San Francisco. The answer of the defendant, on the return of the alternative writ, set up that by virtue of fourth subdivision of section ninety-five of the Consolidation Act, he was only authorized to pay the coupons on said stock as they became due, and that he had already paid over sufficient money to the relators for that purpose; and that although, by subdivision ten of section ninety-five, fifty thousand dollars a year is to be paid out of the treasury for the redemption of said stock, yet none of it had been presented for redemtion; and that the relators had already on hand the sum of one hundred and eighty thousand dollars belonging to the sinking fund for the redemption of said stock, and that until that sum is used and applied in redeeming and cancelling said stock, no more money can be paid them for that purpose.

On this state of facts, the Court below made the writ peremptory, in conformity with the prayer of relators' petition, from which judgment defendant appealed.

*H. H. Byrne and Horace Hawes* for Appellant.

There are three interests represented in this case—that of the city, that of the bond-holders or creditors of the city, and that of the commissioners of the funded debt. The interests of the two first, upon the grounds maintained by the appellant, are in harmony, while that of the latter is in conflict with the other two. The relators assume to represent the bond-holders and to be particularly concerned about the public credit, while in point of fact they assume a position hostile to both debtor and creditor, and the contest on their part is reduced to a mere struggle for the possession and custody of the public funds.

By the provisions of the Consolidation Act no money can be be paid out of the city and county treasury, except for the objects specified in section ninety-five, and the tenth subdivision of that section, as it stood originally, reads as follows:

" The sum of fifty thousand dollars, annually, for the redemption of certificates of the stock mentioned in the fourth subdivision of this section, first applying to that use the money now belonging to said sinking fund."

By the same section, ninety-fifth, as amended by the act of

the eighteenth of April, 1857, which it is submitted must govern in this case, the same construction is preserved, but it is expressed in more explicit language. It is as follows :

"Payment of demands on the Treasury of said city and county, may be made for the following objects, and none others," etc.

"Tenth. Out of the general fund. The sum of fifty thousand dollars, annually, for the redemption of the certificates of stock, mentioned in the fourth subdivision of this section, when the same shall be offered for redemption at the treasury, and after first applying to that use the money now belonging to said sinking fund remaining in the hands of the fund commissioners."

*C. M. Brosnan and C. McC. Delany* for Appellant.

Two statutes that are incompatible cannot stand together; and the first must fall. It is abrogated by operation of law. 3 Ala., 626 ; 8 Black., 581 ; 14 Ill., 334 ; 16 Barb., N. Y., 15.

The Consolidation Act does not, as contended for, violate any contract, nor in any manner impair its obligation. It is clearly constitutional in this respect.

What is the contract, or rather what are the contracts, of which we are treating? Not such as existed against the city before this Funding Act; for those contracts have been cancelled. The city was indebted, and the Legislature authorizes and prescribes means by which the city is enabled to pay the debt, provided the creditors acquiesce. The creditors were not compelled. The act of 1851 is not a contract. So the Supreme Court has decided.

*F. M. Haight and Jo. G. Baldwin* for Respondents.

This was an application for a *mandamus*, to the Fourth District Court, to compel the defendant, treasurer of San Francisco, to pay to the plaintiffs the sum of money required to be annually paid, by the fourth section of the act entitled " an act to authorize the funding of the floating debt of the city of San Francisco, and to provide for the payment of the same," passed May 1st, 1851: session laws of 1851, p. 387. The history of this act appears on the Legislative Journals. It was passed upon a petition of the inhabitants of San Francisco. The following is so much of the act as relates to the question :

§ 2. The said commissioners of the funded debt shall have power to issue, on the part of the said city, certificates of stock, to be known as " The San Francisco City Stock," for an amount equal to the aggregate amount of the floating debt of the said city, which shall be due, or the consideration whereof shall have accrued on or before the first day of May, in the year one thousand eight hundred and fifty-one ; which said certificate shall be in such form as the said commissioners shall prescribe, and shall

be signed by each of the said commissioners then in office, and each and every certificate to purport in substance as follows, namely : That the city of San Francisco owes to the holder thereof a sum to be expressed therein, not less, however, than one hundred dollars, bearing an interest of ten per cent. per annum. The said interest to be payable half-yearly, at such specified time and place as the said commissioners may see fit to direct, upon coupons annexed to such certificates, and the principal sum to be redeemable within twenty years after the date of such certificate ; the coupons for the payment of such interest, according to the terms of such certificate, shall be signed by the president and secretary of the said commissioners, and annexed to and delivered with each certificate, and such certificate, although not under the common seal of the corporate city of San Francisco, shall be as valid and binding upon the said corporate city, as though the same were issued under its said common seal.

§ 4. The said commissioners, previous to the making out of the general assessment list for the said city, in each and every year, shall certify and deliver to the city assessors, the amount which shall be necessary to be raised for the payment of the interest of the debt so funded, for the current year, and the said assessors, in completing said assessment list, shall add to the amount which may be authorized by law to be raised thereon for other purposes, the amount so certified for the payment of such interest, and also the further sum of fifty thousand dollars, in each and every year, for the purpose of a sinking fund, for the redemption of such stock; the first moneys collected upon the whole of such general assessment list, when so completed, shall be paid by the collector thereof into the city treasury, and by the city treasurer into the hands of said commissioners, as fast as collected; and no payment shall, either directly or indirectly, be made out of the moneys assessed or collected, upon the said assessment list, for any other purpose, until the amounts authorized by this section to be assessed and collected, shall have been actually paid over to said commissioners. The common council of the said city shall not have power to enact any provisions which shall prevent or hinder the immediate collection, in current coin, of the amounts authorized to be raised by this section, or otherwise contravene the provisions of this section, and if any such provisions are attempted to be enacted, it shall be the duty of the city-collector to disregard the same, and to collect, in current coin, the amounts by this section authorized to be assessed and collected. The said commissioners shall have the right at all times to inspect the books of the treasurer, assessor, and collectors of said city.

§ 8. Any person holding indebtedness of any character against the city, authorized by this act to be funded, shall have the priv-

ilege of receiving, in lieu thereof, the ten per cent. bonds or certificates, as provided in section two, and the said fund commissioners are hereby authorized and directed to pay said bonds or certificates to such person or persons, at the rate of one hundred cents on the dollar, for every dollar of such indebtedness received.

1. The Consolidation Act does not alter or modify the law of May 1st, 1851. It will be conceded, that it does not in terms profess to alter, modify, or repeal the act of 1851. But it is claimed that there are provisions in the new act which are in conflict with the act of May, 1851, and this must yield to the law junior in time. Under the twenty-fifth section of article four of our Constitution, no law can be revised or amended by reference to its title, but it is required that "the act revised, or section amended, shall be re-enacted and published at length." The Consolidation Act does not revise or amend the act of May 1st, 1851, or repeal it. Can there, under our Constitution, be an implied revision or amendment of a law? If a law cannot be revised or amended by reference to its title, but must be re-enacted and published at length, can it be so revised or amended without any reference, or any publication, or any re-enactment? The design of this constitutional provision, probably, was to compel clear, definite, and candid legislation, and the true construction would seem to require that no law is altered, amended, or revised, except in the mode pointed out.

2. If, however, the Consolidation Act does, upon the true construction of it, alter or modify the act of May 1st, 1851, it is unconstitutional and void. The act of May 1st, 1851, created a contract between the city and its creditors, under the authority of the Legislature, which neither party can alter, modify, or change.

As to what is a contract, and the general principles to be deduced from numerous cases, see Story's Commentaries on the Constitution, page 498, and following (Abridgement;) Smith's Commentaries, page 383, and following. The most recent cases illustrating this subject, in the Supreme Court of the United States, are Curran v. Arkansas, 15 Howard's U. S., 304 : State Bank of Ohio v. Knoop, 16 U. S. R., 369. The principle of this case is again affirmed in Dodge v. Wolsey, 18 Howard's U. S. R., 331.

The relators are trustees for the bond, or certificate-holders, as well as the city. The provision as to sinking fund, to be paid over and invested, is a substantial part of the contract, as well as the means provided to pay interest.

MURRAY, C. J., delivered the opinion of the Court—BURNETT, J., concurring.

After a full re-examination of this case, I am satisfied that our former opinion was wrong. The error consisted in assuming

that the act to fund the indebtedness of the city, was a simple legislative provision, whereby a fund was provided to secure an antecedent debt, when, in fact, it must be regarded as a law authorizing a contract between the City of San Francisco and her creditors, who surrendered the old indebtedness, which was a present charge against her, and took a new security, or bonds bearing a different rate of interest, in lieu thereof. This transaction between the city and the scrip-holders, was in the nature of a new contract, and having been entered into in conformity with the provisions of a law expressly authorizing the parties to contract in the mode they have, it follows that the law entered into and became a part of the contract, and that it cannot be so altered or amended as to impair or destroy the rights of the parties, or the security, which was the moving consideration between them.

We do not mean to say that the Legislature could not alter or amend the law, in such particular as would serve to carry out the trust more fully, provided such amendment did not destroy the fund, or seriously impair the security which the law had offered to the bond-holders.

In the present case, the effect of the Consolidation Act, if maintained, would be to withdraw from the hands of the commissioners of the funded debt, a large amount of money, which they are authorized to loan for the benefit of bond-holders, and the direct consequence is to diminish the fund out of which they are entitled to be paid. Such legislation is obnoxious to that provision of the State and Federal Constitution which forbids the Legislature from passing laws impairing the obligation of contracts.

Judgment affirmed.