MADRE, The VERONICA. See Case No. 16,923.

MAD RIVER R. CO. (SIMPSON v.). See Case No. 12,883.

## Case No. 8,939.

MAENHAUT et al. v. NEW ORLEANS et al.

[2 Woods, 108.] [1]

Circuit Court, D. Louisiana. Nov. Term, 1875.

CONSTITUTIONAL LAW — LEGISLATIVE ACT — CONTRACT—BONDS—TAXES—MONEY COLLECTED—TRUST FUND.

1. An act of the legislature, which provided for the issue of bonds by a municipal corporation, and prescribed the manner in which the tax to pay the interest thereon should be levied, and enacted safeguards to secure its levy and collection, on the faith of which legislation the bonds were sold, constitutes a contract with the bondholder, the substantial performance of which he is entitled to exact.

[Cited in Maenhaut v. New Orleans, Case No. 8,940.]

2. Money collected to pay the interest on said bonds, levied, collected and set apart, according to the provisions of said act, is a trust fund for that purpose, and the municipal corporation may be enjoined from using it for any other purpose without the consent of the bondholders.

[Followed in Ranger v. New Orleans, Case No. 11,564. Cited in Meriwether v. Garrett, 102 U. S. 530; Garrett v. City of Memphis, 5 Fed. 869; Chaffraix v. Board of Liquidation, 11 Fed. 641; Fazende v. City of Houston, 34 Fed. 97.]

3. The act of the legislature of Louisiana of Feb. 23, 1852, establishing the charter of the city of New Orleans, which declares that the

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

rate per cent. of the tax (to pay interest on the consolidated debt) in each municipality shall be in proportion to the indebtedness of each. is not in conflict with article 127 of the constitution of 1845. which declares that "taxation shall be equal and uniform throughout the state."

[Followed in Ranger v. New Orleans, Case No. 11,564.]

In equity. This cause was heard upon the motion of complainants [Rosalie Maenhaut and others] for a preliminary injunction, and for the appointment of a receiver. It was submitted upon the bill, supplemental bill, answer, affidavits, and arguments of counsel.

John A. Campbell and E. Bermudez, for motion.

B. F. Jonas, City Atty., T. J. Semmes, W. W. Howe, John Finney, and E. W. Huntingdon, contra.

WOODS, Circuit Judge. The facts as they appear from the pleadings and affidavits are substantially as follows: Previous to the 23d of February, 1852. the city of New Orleans was composed of one general municipal organization. which comprised municipalities, each of which had a government of its own, and each of which, as well as the general municipal body, had contracted debts for which they were respectively liable. At the date named, an act of the general assembly of Louisiana was approved, which established a municipal corporation to be called the city of New Orleans, to be composed of the several municipalities. and to be governed by a mayor and common council. [Acts La. 1852, p. 53.] The act declared that the estate and title of the several municipalities in lands. bridges. ferries. streets, roads. wharves, markets. stalls. landing places, buildings and other property. should be vested in the city of New Orleans. Section 37 of this act, provided that the debt of the general sinking fund, commonly called the old city debt. and the debts of the three municipalities should be assumed and paid by the city of New Orleans. and the city was declared liable therefor. Five officers of the city. including the mayor. were constituted commissioners of the consolidated debt of New Orleans. and they were authorized to issue the bonds of the city. having not more than forty years to run, with interest payable semiannually. The commissioners were authorized to exchange these bonds for any bonds. obligations or debts of the old corporation. or any of the municipalities, or to sell the same, and with the proceeds pay off said debts. It was provided that the bonds thus issued should form a stock to be called the consolidated debt of New Orleans. It was further provided as follows: "The common council shall annually. in the month of January. pass an ordinance to raise the sum of $600,000, by a special tax on real estate and slaves, to be called the consolidated loan tax, and the rate per cent. of said tax in each municipality shall be in proportion to the debt of each. All ordinances, resolutions or other acts passed by said council after the first day of January in each year, shall be null and void. unless the ordinance imposing the consolidation loan tax shall have been previously passed. At the end of each and every year, any surplus of the consolidated loan tax remaining in the treasury, after the payment of all the interest, shall be applied to the purchase. from the lowest bidder, of such bonds issued under this act as have the shortest period to run." The section further provides: "Nor shall any loan be contracted unless the same be authorized by a vote of a majority of the qualified voters of said city. and no ordinance creating a debt or loan shall be valid unless for some single object or work distinctly specified therein. and unless such ordinance shall provide ways and means for the punctual payment of running interest during the whole time for which said debt or loan shall be contracted." By an act passed on the same day as the act just mentioned. the amount to be levied in January of each year to pay the principal and interest on said bonds was increased to $650,000.

Under authority of these acts. and upon the faith thereof. about ten millions of bonds were issued, which were negotiated above par. and sold in the money markets of Europe and the United States. It further appears that. beginning with the year 1869. the city of New Orleans had issued several series of bonds in violation of the restrictions imposed by the act of 1852. At the extra session of 1870. an act was passed changing the form of the city government. and repealing the act of 1852, retaining in force. however, some of its clauses and sections. In 1874 Act No. 53 was passed. which postponed the levy and collection of any tax for the sinking fund for the purchase of the bonds of the city, until December. 1876. There are now outstanding about $4,142,000 of the consolidated bonds. It appears further, by the averments of the supplemental bill, that on the 14th of July, 1875. the city of New Orleans adopted an ordinance. No. 3190, whereby it was provided that the commissioners of the consolidated debt were authorized to pay. with a delay not exceeding ten days, fifty per cent. of the certain past due interest coupons. and that such pro rata payments be continued out of all interest collections up to January, 1876. provided that the holders of such coupons shall indicate their acceptance of this arrangement by their respective signatures at the time of payment. The said coupons were to be stamped thus: "Half paid." The following are the coupons referred to: Consolidated 1852. due July, 1875. Railroad. up to July. 1875. Pontchartrain Railroad, due July, 1875. etc. The paper to be signed by the bondholders under this ordinance is as follows: "We, the undersigned, holders of city bonds, hereby acquiesce in and approve Ordinance No. 3190 of the city council, providing for the pay-

ment of fifty per cent. of the interest collected and to be collected up to the 1st of January, 1876, the balance to be used for the general relief of the city government, reserving our right to be hereafter paid by the city the balance due on said coupons." The supplemental bill charges that the city council, since the passage of the ordinance aforesaid, has allowed no bondholder to participate in the payments of interest who did not consent to the ordinance, and that it has excluded a number, among whom were complainants, because they would not do so. The complainants are the holders of seven of the consolidated bonds of the city. There has been deposited by the city in the Louisiana National Bank, to the credit of the consolidated loan, during the six months ending July 30, 1875, the sum of $174,409.90, and there is now on deposit in the bank to the credit of that fund, a sum nearly, if not quite, sufficient to pay the interest due on the consolidated bonds. There are many other averments and admissions of the pleadings and matters of fact set forth in the affidavits, which for the purposes of the present motion it is unnecessary to notice. Although the prayer of the bill of complaint is very broad, the purpose of the present motion is very narrow. It is that an injunction may issue against the city and against the Louisiana National Bank, to restrain them from paying out the said funds collected for the interest on the consolidated bonds, for any other purpose than that for which said fund was collected, or in any other manner than in accordance with the laws and ordinances previously existing, and that should there be any further default, the complainants may be allowed to renew their motion for the appointment of a receiver.

Counsel for defendant, not being advised within what narrow limits the relief sought by this motion was confined, have argued many questions which it is not now necessary to pass upon or notice. The only question is, Shall the injunction go as moved for? There can be no serious question that so much of the twenty-ninth section of the act of 1852, as provides for the manner in which the tax to pay the consolidated bonds is to be levied, and the safeguards for the levy and collection of the tax, constitutes a contract with the bondholder, the substantial performance of which he is entitled to exact. 1 Dill. Mun. Corp. § 41; Woodruff v. Trapnall, 10 How. [51 U. S.] 190; Curran v. Arkansas, 15 How. [56 U. S.] 304; Van Hoffman v. City of Quincy, 4 Wall. [71 U. S.] 535; Furman v. Nichol, 8 Wall. [75 U. S.] 44; People v. Woods, 7 Cal. 579; People v. Bond, 10 Cal. 563; Brooklyn Park Co. v. Armstrong, 45 N. Y. 234. For the purposes of this motion, it is immaterial whether the contract is a contract with the state of Louisiana or with the city of New Orleans. In the case of Van Hoffman v. City of Quincy, supra, it was held, however, by the supreme court of the United States, that under like circumstances, both the state and the corporation were bound. It is also unnecessary to consider whether or not some of the relief prayed for by the bill must be sought by mandamus after judgment, and not by bill in equity.

The only question which the court is now called on to decide, is this: The city of New Orleans having collected and set apart, as required by the act of 1852, a fund to pay the interest on the consolidated bonds, can the city be enjoined from appropriating the fund to any other purpose, without the consent of the bondholders? In my judgment, there is no doubt that the city can be thus enjoined. The money specially collected to pay this interest is deposited in bank to the credit of the fund for that purpose. This money, being the fruits of a contract between the bondholders and the state and city, and having been specially collected under authority of law to pay this interest, and deposited in bank to the credit of a fund set apart for such payment, it is held by the city in a fiduciary capacity, and the trust is imposed upon the city to apply the funds to the object for which they were collected. See authorities cited below. This is a trust which equity can enforce.

Dillon, in his learned work on Municipal Corporations, says, in section 729: "In respect of property held by municipal corporations in trust or clothed with public duties, equity has always asserted its jurisdiction to see that the trusts were performed and the public duties discharged. The jurisdiction of chancery over such municipal corporations is forcibly asserted by the house of lords in an interesting and important case, in which the corporation of Dublin, under act of parliament was the trustee of funds raised from water rates to supply the city with water, and where the bill charging the corporation with breaches of trust and mismanagement was filed by the attorney general on behalf of the inhabitants of Dublin paying water rates." This was the case of Attorney General v. Mayor, etc., of Dublin, 1 Bligh (N. S.) 312. In the case of People v. Ingersoll, 58 N. Y. 35, it was held that if the public corporation, having power to act in a corporate capacity, has by its officers so acted under the laws as to become bound by its obligations, the debt has become a corporate and county charge, and the moneys, the fruits and proceeds of the obligation are trust funds, subject to the control of the governing body of the corporation under the general laws of the state. So it was held in the case of Attorney General v. Corporation of Lichfield, 11 Beav. 120, that the borough fund created under the municipal corporation act is a trust fund, and the court of chancery has authority and jurisdiction to compel the parties who receive and apply the fund to account for the sums they receive and the application of them, and, that

the court has jurisdiction if it be expedient and the case require it, to restrain the application of money collected by rates to costs, debts and expenses incurred prior to making the rates. The case of Trevillian v. Mayor, etc., of Exeter, 5 De Gex, M. & G. 828, was this: A corporation raised money under an act of parliament on mortgages of the tolls and additional works of a canal, and acting on what the court of appeal (differing from the court below) decided to be an erroneous construction of the act, applied part of the money so raised in paying off old mortgages affecting other property of the corporation. On the tolls and additional works being an insufficient security, held that the new mortgagees were entitled to follow their money so far as it had been erroneously applied, and to stand in place of the old paid off mortgagees as against the other property of the corporation. So in Attorney General v. Mayor, etc., of Dublin, supra, it was held that where there is any fund created for the purpose of being applied to some public purpose, which fund is vested in a corporation, the court of chancery has, by its original inherent jurisdiction, a right to see to the due application of the fund. The court of chancery will always lay hold of any breach of trust in relation to the administration of property, let the party guilty of it be either in a public or private capacity. Charitable Corporation v. Sutton, 2 Atk. 406. See, also, Attorney General v. Eastlake, 21 Eng. Law & Eq. 43; Sturge v. Eastern Union Ry. Co., 7 De Gex, M. & G. 158.

On these and many other authorities that might be cited, I feel justified in holding that the tax collected and deposited under the act of 1852, to pay the interest on the consolidated bonds, is a trust fund in the hands of the city authorities to be applied to that purpose and no other, and that, if there is any danger that the fund will be diverted to other purposes, the complainants are entitled to their injunction to restrain such diversion. On consideration of the pleadings and affidavits in this case, I cannot shut my eyes to the fact that there is danger of the application of this fund to purposes other than that for which the law authorized it to be collected. It seems, however, that some of the holders of the consolidated bonds have consented to receive half the interest on their bonds, and to allow the city to use the other half for other purposes. It is their right to make this agreement, and the court will not interfere with it. The city ought to be restrained only from diverting so much of the fund as may be necessary to pay the interest on the bonds, the holders of which do not consent to the terms of Ordinance No. 3190, administration series. A preliminary injunction must issue accordingly. It will be also ordered that should there be any further default, the complainants may renew their motion for a receiver.

In the argument upon the motion for injunction, it was claimed by counsel for the city that the act of 1852 was in violation of the constitution of 1845, which was in force when that act was passed, and which declared (article 127), "that taxation shall be equal and uniform throughout the state." The provision of this act of 1852, which is deemed to contravene this constitutional requirement, is this: "The rate per cent. of said tax (tax to pay interest on consolidated debt) in each municipality shall be in proportion to the indebtedness of each." I cannot see any conflict between the law and the constitution. As at present advised, I do not think the objection to the law well founded.

[This cause was subsequently heard at the same term, for final decree. The preliminary injunction was made perpetual, but the other relief asked for in the bill was denied. Case No. 8,940.]