Cook, J.,
delivered the opinion of the Court;
This is an application for a supersedeas, in the following case: Gentry and wife obtained judgment against Baily in the Circuit Court of Cooper county, in an action of dtebtj founded on his bill obligatory j and on the 9th day of September^ 1821, caused an execution to issue thereon, on which the Sheriff returned, that on the 1st day of October, 1821, he levied said execution on a negro man, the property of the defendant, and there being no endorsement thereon, by the plaintiff^ the defendant, on the 13th day of February, 1822, offered liis bond, with security, agreea~ bly to law, to stay all further proceedings on said execution, which bond he had .taken as sufficient, and returned it with the execution. The plaintiff moved the Court to quash the proceedings of the Sheriff, in taking sdid bond, and award to them ,an alias execution, bn the ground, that the law, under which the Sheriff acted, was unconstitutional and void; whereupon, the Court adjudged, that the proceedings had on said executionbe quashed and set aside, and the plaintiff have an alias execution; In support of the application, it is insisted, first, that the Ciicuit Court erred in set; 'ting aside the proceedings of the Sheriff on the execution, and secondly, in awarding an alias execution. In support of the first error assigned, the act of the íast session of the General Assembly of this State, pointing out the manner in which execution may be stayed, &c., is relied on. The application is opposed, on the ground, that so *117 much of the act referred to, as provides for staying executions, is repugnant to the Constitution of the united States, and to the Constitution of this State, and, therefore, void: first, because it impairs the obligation of contracts ; secondly, because, in effect, it makes something else, besides gold and silver coin, atender in payment of debts; thirdly, because it- is retrospective in its operation; and fourthly, because it would effect an unconstitutional delay of justice.
It is contended, -in support of the application, first, that the act under consideration is not repugnant to the Constitution of the United States, nor to the Constitution of this State ; and secondly, that the Court is bound to observe the provisions of the act of the General Assembly, without regard' to the Constitution.
The last point is first in order, inasmuch as it tends to preclude any investigation of the validity of the act. It will, therefore, be first, considered. A course of adjudication, almost entirely uniform and uninterrupted’ since the adoption of the Federal and State Constitutions, as well in the Supreme Court of the United States as in most of the State Courts, would (but for the zealous manner in which this point was urged in argument,) have been deemed satisfactory and conclusive. It is contended that the judiciary, in deciding on the validity of the acts of"the Legislature, usurps a supremacy in government destructive of the powers and independence of its co-ordinate branches, and that the decision of the Court, pronouncing such act unconstitutional, is a virtual repeal thereof. If the declared will of the Legislature, whether consonant or repugnant to the Constitution, has the force and effect of law, and the co-ordinate branches of the government bound to conform to it, until the Legislature itself shall declare a different will, then is the Constitution, as to that body, a mere nullity, a dead letter, and the acts of one branch of the government, created by, and deriving all its powers under the Constitution, are paramount to it. That the Legislature are not under the control of any other branch of the government, as to what they shall do or omit to do, is clear; as in the case put in argument, that if they should neglect to assemble for the purpose of enacting laws necessary for the government of the State, or being assembled, should (in cases where legislative aid is necessary to give effect to constitutional provisions,4n relation to other branches of the government,) exercise their powers so improvidently as to embarrass the administration of justice, the judiciary would neither be competent to command them to meet and enact laws, noi to modify what they had done, but must decide and construe their express enactments. To the objection that the Court, in deciding an act of the Legislature to be unconstitutional, virtually repeals the law, it is but necessary to answer, that it is not the judgment of the Court which destroys the effect of the act; the Legislature being prohibited,by the Constitution, from passing such law, the act itself is void,- and therefore requires no act of the Court, or any other authority, to repeal it. Since the case of Marbury v. Madison, decided in the Supreme Court of the United States, (1 Crmch’s Jtep. 137,) this question has been generally looked upon as settled.
M’Girk, C. J.
In the second section of the sixth article of the constitution of the United States, it is provided, that “ this constitution, and the laws of the United States, made in pursuance thereof, &e., shall be the supreme law’of the land; and the Judges in every State shall be bound thereby, anything in the constitution or laws of affy State *118 to the Contrary notwithstanding.’5 It it conceived that this provision not only gives the power to the Slate Judges, but expressly malees it their duty, to decide on the constitutionality of the laws of the State, whenever they are supposed to conflict With the constitution of the United States. But on the question, whose province is it to decide whether acts of the Slate Legislature contravene the State constitution ? our constitution is silent. The powers of the government are divided into three distinct departments, each of which is to be confided to a separate magistracy, (art. 2, of constitution of this State.) The third article creates the legislative power, and vests it in a General Assembly. The fourth article creates and vests the supreme executive power in a Governor. The fifth article creates and vests the judicial power, in matters of law and equity, in a Supreme Court, and other Courts, therein provided for. The constitution of the United States makes a similar distribution of the powers of the general government, and, under this distribution of power, we find the Supreme Court of the United Stales deciding on the constitutionality of the acts of Congress, although there is nothing in that constitution expressly authorizing that Court to do so. The case above referred to, in 1 Crunch, was an application on the part of Marbury, (founded on the act of Congress which authorizes the Supreme Court of the United States to issue writs of mandamus, in cases warranted by the principles and usages of law, to any Courts appointed, or persons holding office under the authority of the United States,) for a mandamus to compel Mr. Madison, Secretary of State, to deliver a commission. The Court refused to award the mandamus, on the ground, that the act of Congress relied on, was unconstitutional, and in support of that opinion, say: "It is emphatically the duty of the Court to say what the law is ; and, if two laws conflict with each other, the Court must decide on the operation of each.” And in another part of the opinion, page 178 : " So, if a law be in opposition to the Constitution, if the law and Constitution both apply to a particular case, so that the Court must either decide that case conformably to the law, disregarding the Constitution, or conformably to the Constitution, disregarding the law, the Court must determine which of the conflicting rules govern the case. This is of the very essence of judicial duty. ” If, then, the Courts are to regard the Constitution, and the Constitution is superior to any ordinary act of the Legislature, the Constitution, and not such ordinary act, must govern the ease to which they both apply. Those, then, who controvert the principle, that the Constitution is to be considered in Court, a paramount law, are reduced to the necessity of maintaining, that Courts must close their eyes on the constitution, and see only the law. This doctrine would subvert the very foundation of all written constitutions. And again, page 180: “ Why, otherwise, does the Constitution direct the Judges to take an oath to support it ? This oath certainly applies, in an especial manner, to their conduct in their official character. How immoral to impose if on them, if they were to be used as the instruments, and the known instruments, to violate what they swear to support.” In the case of M’Culloch v. the State of Maryland et als., reported 4 Wheaton, 316, the constitutionality of the act of Congress incorporating the President, Directors and Company of the Bank of the United Stales, was the direct question; yet the competency of the Court to decide on the constitutionality of the act, was not questioned.
The next question for consideration is, did the Circuit Court err in setting aside the return of the Sheriff on the execution? And this necessarily leads us to consider the act of the General Assembly of this State, upon the validity of which this question. *119 depends. It authorizes the Sheriff, in terms, to make the return he did; and if the act is constitutional, the proceedings and return of (he Sheriff were right, and the Circuit Court erred in quashing said return, But if the act he unconstitutional, then thei^ is no error on that point. In deciding this question, we shall consider the objections to the act, in the order in which they are arranged in the preceding part of this opinion. First, does this act impair the obligation of contracts ? The act substantially provides, in the first section, that valuers shall he appointed, whose duty it shall he, to appraise all property, real or personal, taken under executions issued by Courts of record or Justices of the Peace. The second section provides, that when any execution shall issue on any judgment heretofore obtained, or hereafter to he obtained, &c., it shall and may be lawful for the creditor, his agent or attorriey, to endorse on said execution or order of sale, that the plaintiff will take property at two-, thirds of its appraised value, in discharge of the whole or part of the execution, or order of sale; that the Sheriff shall make a levy on property, have it appraised or valued, and that if the money is not paid at a given time, then the Sheriff shall proceed to sell the property at two-thirds of its appraised value, if it will sell for so much; if not, he is required to deliver it over to the plaintiff, at two-thirds of such appraised vajue, in discharge of the execution.
The third section provides that in all cases where an execution, &c., is issued, and no endorsement is made in pursuance of the second section, there shall he a stay of aiiy further proceedings on such execution, &c., for the period of two and a half years thereafter, provided the defendant will give a bond to the amount of the execution and interest, with security, to he approved of by the Sheriff. It also provides that real estate maybe substituted, in lieu of persona] security, under certain restrictions. The tenth section extends the provisions of the second section to executions issued, or to he issued before the taking effect of the act. The act also provides that no execution shall issue after one has been previously stayed, unless under particular circumstances. The first inquiry is, do the provisions of this act, in staying executions, impair the obligation of contracts'? First, what is a contract ? Secondly, what is its obligation? A contract is an agreement to do, or not to do, a particular thing. Next, what is its obligation? In the case of Sturges v. Crowningshield, (4 Wheat. 122,) the Supreme Court of the United States give the definition both of a contract and its obligation. The Legislature of New York had passed an insolvent law, by which the debtor as well as the debt might be discharged. The question arose, in that case, whether the law was constitutional. The Court'declared the law unconstitutional and void, so far as it released the debt, because it impaired the obligation of contracts. Chief Justice Marshall, in delivering the opinion of the Court, page 197, says: “ A contract is an agreement to do, or not to do, a particular thing; the law hinds him to perform his undertaking, and this is, of course, the obligation of his contract.” In the case at bar, the defendant has given his promissory note to pay the plaintiff a sum of money, on or before a certain day. The contract binds him to pay that sum at that day, and this is its obligation. In this definition of the obligation of a contract, we must heartily acquiesce.
The obligation of the contract extends further than to pay on a particular day; it continues until the debt is paid, or the act performed. The Constitution of the United States, art. 1, sec. 10, is as follows: “ No State shall enter into any treaty of alliance or confederation, grant letters of marque and reprisal, coin money, emit bills 9f credit, make any thing but gold and silver coin a tender in payment of debts, pass *120 any bill of attainder, ex post facto law, or law impairing the obligation of contracts.” And the 17th sec. of the 13th art. of the Constitution of this State, says that no ex post facto law, or law impairing the Obligation of contracts, can be passed. Here are two express prohibitions against the Legislature impairing the obligation of con* tracts. We have seen what a contract is, and what is its obligation; and now the question naturally and necessarily arises, does the law under consideration impair the obligation of contracts? We approach this question with afull sense of the responsibility we are under. When the legislative department of government enact a law, the question of its validity should be approached by all persons, and particularly by Courts of Justice, with great caution and circumspection. To impair, in the sense in which it was used in both the Constitutions, means to alter so as to make the contract more beneficial to one party, and less so to the other, than by its terms it purporied to be; and the Supreme Court of the United States, in Sturgis v. Crowningshield, (4 Wheat. 197,) declare that any law that releases a part of the obligation, in the literal sense of the word, impairs it. The means afforded to enforce satisfaction for a breach of contract, are, perhaps, of themselves, no part of the contract. But yet they may form a part of the binding force of the contract; for, without legal means to enforce the performance of a contract, it can have no legal effect. It is, in law, as if no contract existed. In the case before the Court, the right has been ascertained, the contract proved to exist. The plaintiffs have a right to enjoy the sum of money now, and the act in question says the party shall not enjoy this right for two and a half years hereafter.
This violates the legal obligation of the contract, and the law is repugnant to the Constitutions of the United States and of this State. It is true, there is a distinction between the remedy and the thing to be remedied. The Legislature may modify the remedy, but they cannot constitutionally take away all remedy; for the 7th section of the 13th article of our Constitution says: “Courts of justice ought to be open to every person,” and “ certain remedy afforded, without sale, denial or delay; ” so that by this section, there must always bo a remedy, and this remedy is to be applied without any postponement or'hinderance. It is a fixed principle of the English government, whose concern for private rights is by no means equal to that of ours, that want of right and want of remedy are precisely the same thing, 1 Bac. Abr. If this is a sound principle, it will follow, that whatever impairs remedy, impairs right. When the remedy is destroyed, the right is also. It surely cannot be contended, that a postponement of the plaintiff’s means of obtaining possession of his right, is any remedy for him, or that it enters into the composition of remedy. Remedy, in law, is the means afforded by law to obtain a right. This statute affords means to postpone and defer the obtaining of right, and is, therefore, not remedial with respect to the great ends of government and justice, nor in a constitutional sense. The Court will pass by the objection, that the law is retrospective in its operation, considering the merits of the application embraced in the other points.
Cook, J.
It is next objected that the act under consideration, in effect, malees property a tender in payment of debts. The 1st clause of the 10th section of the 1st article of *he Constitution of the United States, provides that “No State shall make any thing *121 but gold and silver coin a tender in payment ®f debts.” In adopting this provision, the framers of that instrument used terms of certain and established import. Let us inquire what a tender is, and what its consequences, in cases within the meaning of the Constitution. If one person owes to another a certain sum of money, this is a debt; it is the duty of the debtor to produce to the creditor that sum of money, and offer to pay it to him: this is a tender.; and if the debt so tendered, is not received by the creditor, the debtor is thereby discharged from the duty of tendering it •again, until it shall have been legally demanded by the creditor: and this is its consequences.
The act under consideration does not, in terms, authorize the debtor to tender property in discharge of his debt, but requires the creditor to endorse his consent, so to receive it, on his execution, under the penalty of being delayed in the enjoyment of his right, for the period of two years and a half. If, then, we define a tender in general terms to be an act on the part of the debtor, which affords some' exemption to him, and works a correspondent inconvenience to the creditor, we shall find 'that the exemption afforded the defendant, by the operation of this law, is more beneficial to him, and the inconvenience imposed on the creditor is much greater than would result from an actual tender made by the debtor himself. Construing the Constitution, then, .to prohibit the States from passing laws, the effect of which would be to induce the creditor to receive something else than gold .and silver coin in payment of the debt due him, in order to avoid an inconvenience that would result on his failure to do so, we are led to the conclusion that'the act under consideration is repugnant to the provision of the Constitution of the United States, last referred to.
It is also contended that this provision is void, because it would 'effect an unconstitutional delay of justice. The seventh section of our declaration of rights, article thirteenth of our Constitution, requires that “ Courts of Justice be open to every person, and certain remedy afforded for every injury to person, property or character., and that right and justice be administered without sale, denial or delay.” In this provision is included every injury to which a man is subject, either in his person, property or ■ reputation, and every question of right that can become a subject of judicial investigation. It operates alike on eveiy branch of the government concerned in the administration of justice. Of the Legislature; it requires the enactment of such laws as may be convenient and necessary for the speedy administration of justice ; that “ Courts of Justice be open to every personand when the jurisdiction of a Court has attached to any question of right, we must understand this provision as requiring such Court, notwithstanding any law, usage or custom to the contrary, to administer right and justice in such case, without sale, denial or delay. The next inquiry, then, is, what is a delay of justice within the meaning of tins' clause of our Constitution? It does not, it cannot mean, that whenever in fact an injury has been done or suffered, no time shall intervene before such injury shall be redressed; nor can it mean that no time shall be afforded the person complained of, to controvert the charge brought against him. This would take away the means of doing justice. We must, then,-give to the terms of the provision a reasonable and operative construction, which appears to be this: that reasonable means shall be ■employed to ascertain right, and .when that is legally done, justice shall be administered as speedily as may be, according to the usual operation of legal process. Any legislative provision,’then, the effects of which tend not to the legal ascertainment of *122 right, but alone to the delay of justice, is repugnant to the provision of oar Consti' tution last mentioned. If the word “ delay” is to be understood in its common and received acceptation, (the only proper mode of interpreting words in common use,) which is, to hinder, defer or frustrate, we are unavoidably led to the conclusion that the act under consideration does “ delay” justice, in the literal sense of the word, and in the sense in which our convention used it.
In the case before the Court, the right'of the plaintiffs to have of the defendant a certain sum of money, is legally ascertained. Justice requires, that that sum of money should be paid by him to them, and by the provision of the act under consideration, that payment is deferred or delayed for the period of two years and a half. It is true the act presents to the creditor the alternative of communicating his demand for something else, or of submitting to the delay; but, whether he makes the one choice or the other, it is under the influence of a legislative provision, repugnant to the Constitution; for, if he elects to submit to delay, the administration of justice is deferred; and, if he consents to take property in payment of his debt, as he is driven to this choice by the binderance of justice, then justice is denied io him, his right to receive money, instead of property, being, ascertained. The Circuit Court, therefore, did not err in setting aside the tond and Sheriff’s return.
M’Girk, C. J.
But yet, there is some further difficulty in this case. It being the opinion of this Court, that a supersedeas ought not to be granted, because the Court set aside the return of the Sheriff, on the ground of its being unauthorized, then there has, as the return shows, been a levy, and the law on this subject appears settled, that an alias execution cannot regularly he issued, by all the cases put by the books. The defendant appears to have been deprived of his property, and, therefore, until the' levy is exhausted, it is unjust his property should he subjected again; and we are inclined to the opinion, that if it appeared by the Sheriff’s return, that the defendant had received his property again, and more especially, if he had received it at his own instance, that then the relation between hizn and his creditor would not be altered. But, however the fact may be in this case, it does not appear whether the property has been restored or not; at all events, if it has been restored, the Sheriff may re-take and sell; if it has not been restored, the Sheriff may still sell, without a new execution. Therefore, the alias ought not to have been awarded.
Let the supersedeas go.