UNITED STATES v. JOHNSON. See Case No. 14,672.

## Case No. 15,489.

UNITED STATES ex rel. FOOTE v. JOHNSON COUNTY.

[5 Dill. 207, note.] [1]

Circuit Court E. D. Missouri. 1879.

CONSTITUTIONAL LAW — RAILROAD AID BONDS — LEGISLATION OF MISSOURI—OBLIGATION OF CONTRACTS.

The act of the legislature of Missouri of March 8th, 1879, in respect of the levy of taxes for the payment of county indebtedness, known as the "Cottey Act," if applicable to the payment of judgments rendered against counties upon railroad aid bonds issued prior to such act, is in conflict with the provision of the federal constitution which prohibits the states from impairing the obligation of contracts.

Elisha Foote, the relator, is a judgment creditor of the defendant county upon railroad aid bonds. To an alternative mandamus the county pleaded, in its return, the act of the legislature of Missouri of March 8th, 1879, quoted in U. S. v. Lincoln Co. [Case No. 15,-503], in the manner set forth in the opinion of the court, to which return there was a demurrer.

John B. Henderson and others, for the relator.

Thomas C. Reynolds and others, for the county.

Before DILLON, Circuit Judge, and TREAT and KREKEL, District Judges.

KREKEL, District Judge. The relator, Elisha Foote, on the 20th day of April, 1878, recovered in this court a judgment against Johnson county for the sum of $4,416.22 on bonds issued on account of subscription to the Warrensburg and Marshall Railroad Company, made by Warrensburg township, in Johnson county. [Case No. 4,912.] Relator made demand for payment, which being refused, he applies for a mandamus to compel the county court and treasurer of Johnson county, Missouri, to pay him any sum of money that may be in the hands of the treasurer of said county and collected for the purpose of paying the coupons on the bonds issued, and if, after such payment, any balance remains unpaid thereon. then that said county court cause to be levied, assessed, and collected by a special tax on the property of Warrensburg township, under and according to the provisions of the laws of Missouri, sufficient to pay the remainder of said judgment.

An alternative writ of mandamus issued, to which the treasurer makes return as follows: That the moneys collected to pay interest coupons on bonds issued by Johnson county, on behalf of Warrensburg township. amount to $4,652.28, $1,502.28 whereof are now in the hands of the treasurer; that the balance was loaned out in November, 1876, under the or-

---

[1] [Reported by Hon. John F. Dillon. Circuit Judge, and here reprinted by permission.]

der of the county court, and has not been paid, and there are no other funds of Warrensburg township. Further answering, he says that he cannot pay any money except on the order and warrant of the county court.

The county court, in their first return to the alternative writ, filed September 2d, 1878, say that, on the facts set out in the treasurer's answer, which they make a part of their return, they submit whether they should answer further.

These returns being held insufficient, on leave for further return, the county court, on the 23d day of November, 1878, certifies obedience to the alternative writ, by showing that they had collected the several amounts loaned out and paid the proceeds thereof, including cash in treasury, on said judgment.

On March 11th, 1879, respondents, the county court, filed a further return, and for cause why they should not be commanded to levy and collect taxes to pay the balance remaining unpaid on said judgment, show: 1. That relator had failed to avail himself (as he was bound to do) of the law as it existed at the time of the issuing of the bonds, and still exists in the state of Missouri, giving the circuit court supervisory power over the county court regarding the levy, assessment, and collection of the tax to pay said judgment. 2. The unconstitutionality of the act under which the bonds issued. 3. That the act of the general assembly of the state of Missouri, approved April 12th, 1877, prohibited the payment of bonds issued under the so-called railroad act of March 23d, 1868, until said act shall have been declared constitutional by the courts of final jurisdiction. That the supreme court of Missouri, a court of final jurisdiction, had decided said last mentioned act unconstitutional, and the county court was thus prohibited from making payment of said judgment. 4. That they have no authority to levy a tax on real estate only, as commanded to do by the alternative writ. 5. That they can levy a tax at the regular May term of the court only. 6. That by an act of the general assembly of the state of Missouri, approved March 8th, 1879, entitled "An act concerning the assessment, levy, and collection of taxes, and the disbursement thereof," said county court is deprived of power to levy the tax mentioned in said alternative writ, except with the previous sanction of the circuit court of said county, and said judges of said county court are threatened with punishment and forfeiture of office should they levy said tax without being ordered first to do so by said circuit court. 7. The treasurer has no power or authority in the premises, except under the order of said court.

To this last and further return a demurrer is filed for insufficiency in law.

As to the first plea, that relator had not availed himself of the supervisory power given the circuit courts over county courts in Missouri regarding tax levies, it will be sufficient to say that respondents' plea does not show a state of facts falling within the supervisory power of the circuit court, even if such power could have been called into exercise in a case like the one before the court, which is doubted.

The second plea, that the act under which the bonds issued is unconstitutional and void, is pleaded, as stated by the counsel, for the purpose of being made available in the contingency of the supreme court of the United States changing its views regarding the constitutionality of the act of March 23d, 1868.

The third plea sets up the act of April 12th, 1877, as prohibiting county courts from complying with such orders as are prayed for by relator, until the act of March 23d, 1868, shall have been previously decided to be constitutional by the courts of final resort. Regarding this plea, it may be said, in the first place, that the act of April 12th, 1877, is one enabling and authorizing counties, cities, and towns to compromise their debts, and provides that no township bonds "shall be purchased, redeemed, or renewed," provisions altogether inapplicable to the case before us, in which payment of a judgment obtained on such bonds is involved. In the next place, this court, in the original case, decided the act of March 23d, 1868, to be constitutional, following the decision of the supreme court of the United States. Again, the supreme court of the United States is a court of final jurisdiction. If by the use of the word "courts" is meant that both the state and United States courts of final jurisdiction must decide in favor of the constitutionality of the act, then, for this reason, the act must be held void so far as it is pleaded and applicable to this case, for reasons more particularly pointed out in the consideration of the sixth plea pleaded. The supreme court of Missouri having held the act of March 23d, 1868, constitutional when the bonds were issued, United States courts will protect rights acquired under such holding against any change of views of the supreme court of that state, as was decided by Judge Dillon in the original case, following the adjudications of the supreme court of the United States in Alcott v. Supervisors, 16 Wall. [83 U. S.] 678; Township of Pine Grove v. Talcott, 19 Wall. [86 U. S.] 666, and cases cited.

The fourth plea, that the county court has no authority to levy taxes on real estate exclusively, will be disposed of by allowing relator to amend his petition for mandamus so as to include personal property and merchants' statements, as provided by the act of March 10th, 1871, amending the act of March 23d, 1868, and by amending the alternative writ of mandamus herein so as to conform to the amended prayer for the writ. U. S. v. Union Pac. R. Co. [Case No. 16,601].

The fifth plea pleaded, that the county court can only levy taxes, under existing laws, on the first Monday in May of each

year, may not apply to a case in which special authority is given to levy, assess, and collect taxes for a designated purpose; yet this court, having due regard to the cost incurred by such collection, has always directed the levies to be made at the time and with other county revenue.

The sixth plea, setting up the act of the general assembly of Missouri of March 8th, 1879, depriving county courts of the power to levy the tax mentioned in the alternative writ, except with the previous sanction of the circuit court of Johnson county, and the threatening with punishment the violation of the law, deserves, and will receive, the consideration at the hands of the courts which the legislative will expressed in enactments is entitled to, and which it will always respect, when not in conflict with other and higher obligations resting upon it.

On the first day of February, 1871, the day the bonds and coupons upon which the judgment in the original suit was obtained were issued, the act of 23d of March, 1868, authorizing their issue, in its 2d section, provided: "In order to meet the payments on account of the subscription of the stock according to its terms, or to pay the interest and principal on any bond which may be issued on account of such subscription, the county court shall from time to time levy and cause to be collected, in the manner as county taxes, a special tax, which shall be levied on all the real estate lying within the township making the subscription, in accordance with the valuation then last made by the county assessor for county purposes."

At the time of the passage of the act of March 23d, 1868, and at the time of the issuing of bonds thereunder, the laws of Missouri provided for the levy and collection of county taxes as follows: An assessor is elected every two years, who lists and assesses all the property (not specially exempt), including licenses, in the state; he returns a list of his assessments to the county clerk; this list is passed on by a county board of equalization, and any errors are corrected by the county court. The sheriff is ex-officio collector, and to him a copy of the assessor's lists is furnished at a specified time. He collects the revenue, is required to make settlements with the county court, and pay over the money collected to the treasurer.

The treasurer, under the 3d section of the act of March 23d, 1868, is "required to receive and collect of the sheriff of the county the income from the tax provided in section 2 (already quoted), and to apply the same to the payment of the stock subscription according to its terms, or to the payments of interest and principal of the bonds, should any be issued in payment of such subscription; he shall pay all interest on such bonds out of any money in the treasury collected for this purpose by the tax so levied, as the same becomes due, and also the bonds as they mature, which shall be cancelled by the

county court, and this service shall be considered a part of his duty as county treasurer."

The fifteenth paragraph of the constitution of Missouri of 1865 provides: "That courts of justice ought to be open to every person, and certain remedy afforded for every injury to person, property, or character; and that right and justice ought to be administered without sale, denial, or delay."

That part of the constitution of the United States prohibiting states from passing laws "impairing the obligation of contracts," is found in all Missouri constitutions, past and present.

The second sub-division of article 6 of the constitution of the United States provides that "this constitution, and the laws of the United States which shall be made in pursuance thereof, and all treaties made or which shall be made under the authority of the United States, shall be the supreme law of the land, and the judges in every state shall be bound thereby, anything in the constitution or laws of any state to the contrary notwithstanding."

We have thus before us the outlines of the rights and remedies to which relator was entitled at the time of the issuing of the bonds. The question is, to what extent did they enter into the obligation and contract, and have they been in any way impaired by the several acts of the general assembly of the state of Missouri pleaded by the respondents?

The question of the effect of the constitutional provision prohibiting the states from passing laws "impairing the obligation of contracts" came under review before the supreme court of the United States as early as 1810, in the case of Fletcher v. Peck, 6 Cranch [10 U. S.] 87. In this case Georgia undertook to rescind a prior act under which individual private rights had been acquired, and Chief Justice Marshall, after stating that "the validity of the rescinding act might well be doubted if Georgia were a single sovereign power." goes on to say: "But she is a member of the American Union, and that Union has a constitution, the supremacy of which all acknowledge, * * * declaring that no state shall pass * * * laws impairing the obligation of contracts. * * * Whatever respect might have been felt for the state sovereignties, it is not to be disguised that the framers of the constitution viewed with some apprehension the violent acts which might grow out of the feelings of the moment, and that the people of the United States, in adopting that instrument, have manifested a determination to shield themselves and their property from the effects of those sudden and strong passions to which men are exposed; the restrictions on the legislative power of the states are obviously founded in this sentiment, and the constitution of the United States contains what may be deemed a bill of rights for the

people of each state." The rescinding act was held to be void.

The case of Bronson v. Kinzie, 1 How. [42 U. S.] 311, was regarding the validity of an act of the legislature of Illinois, which, after the mortgage had been given, enacted a law giving mortgagors the right to redeem within twelve months after sale, and prohibiting the sale from being made at less than two-thirds of its appraised value. This act was held to be unconstitutional. After discussing at great length rights and remedies, Chief Justice Taney, speaking of the remedy, says: "It is the part of the municipal law which protects the right, and the obligation by which it enforces and maintains it. It is this protection which the clause in the constitution now in question mainly intended to secure, and it would be unjust to the memory of the distinguished men who framed it to suppose that it was designed to protect a mere barren and abstract right, without any practical operation upon the business of life."

In Hoffman v. Quincy, 4 Wall. [71 U. S.] 535, Mr. Justice Swayne, speaking of the remedy, says: "The ideas of validity and remedy are inseparable, and both are parts of the obligation which is guaranteed by the constitution against invasion. The 'obligation of a contract' is the law which binds the parties to perform their agreements, citing Sturges v. Crowninshield [4 Wheat. (17 U. S.) 122]. The prohibition has no reference to the degree of impairment; the largest and the least are alike forbidden, citing Green v. Biddle [8 Wheat. (21 U. S.) 1]. The objection to the law on the ground of its impairing the obligation of a contract, can never depend upon the extent of the change which the law effects in it. Any deviations from its terms by postponing or accelerating the period of performance which it prescribes * * * impairs the obligation."

In the case of White v. Heart, 13 Wall. [80 U. S.] 646, when an act of the Georgia legislature came under review, the court says that "the ideas of validity of a contract and the remedy to enforce it are inseparable, and both are parts of the obligation which is guaranteed by the constitution against invasion." Accordingly, whenever a state, in modifying any remedies to enforce a contract, does so in a way to impair substantial rights, the attempted modification is within the prohibition of the constitution, and, to that extent, void. Walker v. Whitehead, 16 Wall. [83 U. S.] 314, is to the same effect.

In Murray v. Charleston, 96 U. S. 433, decided at the October term, 1877, the United States supreme court, speaking through Justice Strong, says: "The provision of the constitution that no state shall pass a law impairing the obligation of a contract, is a limitation upon the taxing power of a state as well as upon all its legislation, whatever form it may assume." See, also, U. S. v. Miller Co. [Case No. 15,776], note. The ef-

fect of this doctrine upon limitations of taxation placed in constitutions and laws of states after the time of contracting the obligations, is easily seen.

The last reported utterance of the supreme court of the United States, in Edwards v. Kearzey, 96 U. S. 595, is that the remedy subsisting in a state when and where the contract is made and is to be performed is a part of its obligation, and any subsequent law of the state which so affects the remedy as to substantially impair and lessen the value of the contract is forbidden by the constitution of the United States, and, therefore, void. In this case the court goes over the whole ground, approving their former holdings, and giving a very instructive review of the past, in many particulars specially applicable to our present condition.

The state authorities are abundant, and as pointed and direct on the question under consideration as the federal. Citing a few of the many may suffice, commencing with Missouri.

In Baily v. Gentry, 1 Mo. 164, decided in 1822, the question was the constitutionality of the stay law for two and a half years, unless property two-thirds in value be taken by creditors. Judge McGirk cites Sturges v. Crowninshield, 4 Wheat. [17 U. S.] 122, and adopts Chief Justice Marshall's definition, holding that a contract is an agreement to do or not to do a particular thing; the law binds him to perform his undertaking, and this is, of course, the obligation of his contract. "The defendant has given his promissory note to pay the plaintiff a sum of money on or before a certain day. The contract binds him to pay that sum at that day, and this is the obligation. In the definition of Chief Justice Marshall of the obligation of a contract we most heartily acquiesce. Any law that releases a part of the obligation, in the literal sense of the word, impairs it. The means afforded to enforce satisfaction for a breach of contract are, perhaps, of themselves no part of the contract; yet they may form a part of the binding force of a contract; for without legal means to enforce the performance of a contract, it can have no legal effect. It is in law as if no contract existed." Speaking of the remedy, the court says that under the constitution there always must be a remedy, "and this remedy is to be applied without any postponement or hinderance."

The question came again before the supreme court of Missouri in Bumgardner v. Circuit Court of Howard Co., 4 Mo. 40. Here the constitutionality of a stay law which had been passed, staying collection of judgments under ten dollars one month, under thirty dollars two months, and under ninety dollars four months, was involved. The court affirms its holding in Baily v. Gentry, above cited.

In the case of Stevens v. Andrews, 31 Mo. 205, Judge Napton, speaking for the court,

approvingly cites the Missouri and Illinois cases,—Bronson v. Kinzie, 1 How. [42 U. S.] 311, and McCracken v. Haywood, 2 How. [43 U. S.] 268,—and says: "The propriety of overruling these decisions, even if they did not meet the entire concurrence of the judges now composing the court, might very well be questioned. But the decisions of the supreme court of the United States, in the two cases cited, are quite as conclusive on the subject as the adjudication here."

A more recent decision of the supreme court of Missouri (State v. Shortridge [March term, 1874] 56 Mo. 126), brought under review the levy of a tax of more than one-twentieth of one per cent, under the charter of the Missouri and Mississippi Railroad Company. The court, after determining that the tax levy is limited to one-twentieth of one per cent, says: "At the time this railroad charter was passed, the general law authorized county courts which had issued bonds to railroad companies to levy taxes without limitation to pay the interest on their bonds, and to provide a sinking fund to pay the principal. 1 Rev. Laws 1855, p. 429, § 34. This provision was continued in the general statutes of 1865, and is still the law of this state (that is to say, at the time when the opinion was delivered). And no doubt this provision would have entered into and formed a part of these bonds, and might have so entered into the obligation of the contract as to prevent a subsequent repeal by the legislature if there had been no restriction contained in the special act authorizing this subscription." As there are no restrictions in the act of March 23d, 1868, under which the bonds issued, the above doctrine applies in full force, and is in exact harmony with all the cases hereinbefore cited. See, also, State v. Miller, 66 Mo. 329.

Other state courts are in harmony with Missouri courts. The case of Blair v. Williams came before the supreme court of Kentucky in 1823, and is reported in 4 Litt. 35. It involved the constitutionality of a stay law of that state, and the court holds that "the legal obligation of a contract consists in the legal remedy, and that the clause in the constitution of the United States which declares that no state shall pass any law impairing the obligation of contracts refers to the legal obligation, and not to the obligation arising from conscience alone, and that a law passed after the contract is made, extending the time of payment of a judgment, impairs the obligation of a contract and violates the constitution of the United States." See, also, Sabatier v. Creditors (decided in 1828) 6 Mart. (N. S.) 310; People v. Bond, 10 Cal. 563; Tennessee & C. R. Co. v. Moore, 36 Ala. 371; People v. Brooks, 16 Cal. 11; Oatman v. Bond, 15 Wis. 20; Hadfield v. City of New York, 6 Rob. (N. Y.) 501; Jones v. McMahon, 30 Tex. 719.

This citation of authorities, which could be extended almost without limit, establishes that the provision of the constitution of the United States prohibiting legislatures from impairing the obligation of contracts was intended to secure contracts, as well as remedies substantially necessary for the enforcement thereof, against state interference, and neither can be impaired by state constitutions, laws, or adjudications.

The authorities are conflicting as to the extent to which legislatures may control the remedies; but all agree that such as existed at the time of entering into the contract cannot be so changed as to make it less valuable. The changing and enacting of new laws, thereby establishing additional tribunals, requiring them to pass on questions over which, from the very nature of federal judicial power and jurisdiction, they can have no control, thus or in any other manner causing unreasonable delays, fall within the constitutional prohibition.

Let us examine, in the light of reason and adjudication, the act of the general assembly of the state of Missouri of March 8th, 1879, in order to see whether it is in conflict with them. At the time the bonds sued on were issued, the law authorizing their issue required the county court to levy and cause to be collected, as other county revenue, a special tax sufficient to pay the interest and principal of the bonds as either became due —a simple, direct, and short proceeding.

The act of March 8th, 1879, in its 1st section, limits the assessment, levy, and collection of taxes to state revenue, the payment of interest on the state debt, the taxes for current county expenditures, and for public schools, not to exceed the rates prescribed by the constitution and laws of this state, thereby abrogating the provisions of the act of March 23d, 1868, which directs the county court to levy and collect, as other county revenue, taxes to pay the interest and bonds issued under it. But the collection may take place under the 2d section of the act of March 8th 1879, providing that the prosecuting attorney of the county, at the request of the county court, shall present a petition to the circuit court or judge, setting forth the facts and specifying the reason why other than the taxes in the 1st section specified should be collected; and if the court or judge is satisfied of the necessity of the collection of other taxes not in conflict with the constitution and laws of the state, he may make the order for the collection of the tax. Under these provisions, take the case of relator Foote, who obtained a judgment on township bonds—a class of bonds the supreme court of Missouri has declared void, and the supreme court of the United States valid—what would be the undoubted action of the state circuit judge, who, under the recent act, is to determine whether the tax is in conflict with the constitution and laws of the state? It could be but one way, and that against the validity of the tax, notwithstanding the provision for payment of the obligation under the act authorizing the is-

suing of the bonds. The act of the 23d of March, 1868, directs the county court "to levy and cause to be collected, in the same manner as other county taxes," a special tax to pay the interest and bonds. The 1st section of the act of March 8th, 1879, limits the collection of county revenue "to current county expenditures," and relegates the collection of all other taxes to the 2d section of the act, under the proviso "that the circuit court or judge, upon being satisfied of the necessity for such other tax or taxes, and that the assessment, levy, and collection thereof will not be in conflict with the constitution and laws of this state," shall make an order directing the county court to levy and collect such tax. As the supreme court of Missouri has decided the bonds for the payment whereof the taxes are to be levied void, the circuit court or judge, as before stated, could act but one way, and that is, refuse to make the order for the levying of the tax, thereby denying relator all remedy.

But this is not all. Judgments of United States circuit courts held valid by the supreme court of the United States are virtually, under the recent act of the legislature, if applicable to such judgments, to be submitted to the county and circuit courts of the state of Missouri, and if by either found invalid, the provision requiring the collection of a tax, found in the act of the 23d of March, 1868, upon the faith of which the bonds issued, are to be ignored and held to be of no avail to the relator. Such is not the law. The courts of the United States are as much the courts of the people of Missouri as their own courts. The judgments of federal courts are to be treated in the states as at least of equal standing with judgments of state courts, and should as readily be obeyed and carried into effect. The law of March 8th, 1879, must be declared inapplicable to the proceedings in this case—held void so far as it attempts to affect it, and held not to be a sufficient return to the alternative writ of mandamus.

Regarding the 5th section of the act under review, which provides punishment for violations of the provisions of the act, the question arises, is it intended to prohibit the employment of the ministerial machinery of the state by punishing its officers for obeying judicial orders and process of United States courts? Notwithstanding the strong tendencies disclosed throughout the whole act, and specially in the section already examined, such a conclusion should not be arrived at unless there is no escape from it for obvious reasons. As already stated, the courts of the United States are the courts of the people of Missouri, and as such should find their ready support. A successful denial of a partial use of the ministerial machinery of the state by the United States courts for purposes of enforcing its judgments, might necessitate the creation of additional federal officers, or the employment of the present force in a manner not likely to be more acceptable to the people of the states than their own officers. The common bond of union can only work out its full benefits by a ready discharge of duty which comity and the relation of the states and the people thereof owe to each other.

For these and other reasons, no presumption that the act of the legislature under review is intended to deny the use and employment of the ministerial machinery of the state in executing process of the United States courts will be indulged in.

It is strongly urged in argument that the taxes asked to be collected cannot be collected or paid without incurring criminal penalties provided in the 3d and 5th sections of the act under review. This is nothing new. The question came before the supreme court of the United States in Riggs v. Johnson Co., 6 Wall. [73 U S.] 166, and the remedies are there pointed out in case of interference with persons or officers who are directed and carry out orders or process of the United States courts. See, also, U. S. v. Silverman [Case No. 16,288]. As said in the former case, no such apprehension as interference with the process of this court will be anticipated.

The question lately decided by the supreme court of Missouri in the case of State v. Macon Co. [68 Mo. 29],—not yet reported,—whether county courts in ordering warrants on the treasurer are acting judicially or ministerially, need not be reviewed in the case before the court, for under any proper reading of the decision it is inapplicable here, for it will hardly do to say that when a law, as in the act of March 23d, 1868, directs special taxes to be levied and collected for a specific purpose, that to draw warrants, if such are necessary, in favor of those entitled to the money collected, is a judicial act. The question whether mandamus is the proper remedy to compel county courts to make levies and enforce the collection of taxes when required by law to do so. or to compel the issue of warrants on the treasurer on a specific or general fund, has been so often determined in this court, with the approval of the supreme court of the United States, that it can scarcely be said to be an open question. See U. S. v. County Court of Vernon County [Case No. 14,877].

A suggestion has been made that the act of March 8th, 1879, may not have been intended to act retrospectively, nor intended, by the use of the words "the tax for current county expenditures" in its 1st section, to interfere with collections provided for in the 2d section of the act of March 23d, 1868, which directs the collections to be made "in the same manner as county taxes." Such an interpretation, however gladly we would accept it, seems difficult to harmonize with the whole tendency of the act. The return of respondents certainly does not proceed upon that idea, for such a construction would show its insufficiency as a return.

The conclusion arrived at is that the act of

U. S. v. JONES (Case No. 15,492)                    [26 Fed. Cas. page 638]

March 23d, 1868, points out a plain ministerial duty to be performed by the county court, without let, hinderance, or supervision of the circuit courts of the state; that the act of March 8th, 1879, deprives the county court of this power and transfers it to the circuit court or judge, who is to act under limitations, seriously affecting, if not altogether depriving relator of his rights. This so impairs his remedy given by the act under which the bonds issued as to substantially lessen the value and efficiency thereof, thereby falling within the constitutional prohibition as expounded by a long line of federal decisions culminating in 96 U. S. (October term, 1877), heretofore cited.

The further return of the county court of Johnson county is held to be insufficient, and the demurrer thereto sustained, and a peremptory writ of mandamus ordered. Ordered accordingly.

[This case was originally published in 5 Dill. 207, as a note to United States v. Lincoln Co., Case No. 15,503.]