## Case No. 8,707.

### McCOMB v. BOARD OF LIQUIDATION et al.

[2 Woods, 48;[1] 7 Chi. Leg. News, 251.]

Circuit Court, D. Louisiana. Nov. Term, 1874.[2]

BONDS—STATE — PARTICULAR PURPOSE OF ISSUE—
SUBSEQUENT DIVERSION — SUIT AGAINST STATE
OFFICERS — AMENDMENT 11 TO CONSTITUTION —
OBLIGATION OF CONTRACTS.

1. An act of the legislature of a state authorized the issue of fifteen millions of dollars in new consolidated bonds, to be exchanged for old bonds of the state, at the rate of sixty cents of consolidated bonds for one dollar of the old bonds, and declared that the consolidated bonds should be used for no other purpose than to take up the old bonds on the terms aforesaid, and levied an annual tax for the payment of the principal and interest of the consolidated bonds, and declared that every provision of the act should be considered a contract between the state and the holders of consolidated bonds, and the terms of the act were accepted by many holders of old bonds, and the exchange of bonds made: *Held*, that a subsequent act of the legislature which authorized the payment of consolidated bonds to general creditors of the state, dollar for dollar, was a violation of said legislative contract with the holders of the consolidated bonds, and was null and void.

2. A bill in equity brought in a United States court by the holder of such consolidated bonds against certain state officers to enjoin them from issuing consolidated bonds to the general creditors of the state, dollar for dollar, is not a suit against the state, and is not prohibited by the eleventh amendment to the constitution of the United States.

[Cited in Chaffraix v. Board of Liquidation, 11 Fed. 639, 644.]

3. The courts of the United States may entertain such a suit, and restrain the state officers from violating, under color of a void and unconstitutional law, the contract of the state with the complainants.

This was a bill in equity, which was heard upon the motion of complainant [Henry S. McComb,] for a preliminary injunction. At the same time was heard a demurrer to the bill filed by defendants. The bill was filed against William P. Kellogg, C. C. Antoine, Charles Clinton, Antoine Dubuclet, P. G. Deslonde and Michael Hahn, who, it is averred, constitute the board of liquidation of the state of Louisiana, and against the "Louisiana Levee Company." It alleges in substance that complainant is the owner of three consolidated bonds of the state of Louisiana for one thousand dollars each, issued by virtue of the provisions of an act of the general assembly, approved January 24, 1874, entitled "An act to provide for funding obligations of the state by exchanging for bonds," etc.; that by the provisions of said act, the natural persons above named as defendants, who were respectively the governor, lieutenant governor, auditor of public accounts, treasurer, secretary of state, and speaker of the house of repre-

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

[2] [Affirmed in part and reversed in part in 92 U. S. 531.]

sentatives of the state of Louisiana, were constituted a board of liquidation, which was empowered to exchange the consolidated bonds, which they were authorized to issue by the act for all valid bonds and warrants outstanding at the passage of the act, at the rate of sixty cents on the dollar. The bill further alleged that under and by virtue of an act of the general assembly passed February 20, 1875, the board of liquidation was authorized and required to issue to the defendant, the Louisiana Levee Company, consolidated bonds at par, for such sums as might be found due for work done by the company up to the first day of October, 1873, after deducting credits and payments, and that unless restrained, the board of liquidation would issue the bonds accordingly. The complaint of the bill is that this action of the board will be in violation of the contract of the state, and will necessarily decrease the value of the bonds held by complainant; that the act of the legislature authorizing the issue of the bonds to the levee company is unconstitutional and void, and the bill therefore prays that the defendants, who constitute the board of liquidation, may be enjoined from issuing consolidated bonds to the levee company.

For a better understanding of the case made by the bill, it will be necessary to recite more fully the provisions of the constitutional and statute laws of Louisiana referred to in the bill. Section 1 of the act of January 24, 1875, popularly known as "the funding bill," provides that for the purpose of consolidating and reducing the floating and bonded debt of the state, the governor, lieutenant governor, auditor, treasurer, secretary of state, and speaker of the house of representatives, are authorized to prepare and issue bonds to be known as "consolidated bonds of the state of Louisiana." * * * to the amount of fifteen million dollars, or so much thereof as may be necessary. Section 2 declares that the officers designated shall constitute a board of liquidation. Section 3 provides that the consolidated bonds shall be exchanged by the board of liquidation for all valid outstanding bonds of the state, and all valid warrants drawn previous to the passage of the act * * * at the rate of sixty cents in consolidated bonds for one dollar in outstanding bonds and all valid warrants. Section 5 provides that "the consolidated bonds herein authorized shall be held and used by said board of liquidation only for the purpose of exchange as aforesaid; said bonds shall be used for no other purpose or purposes than as authorized by this act," and imposes penalties on any member of the board of liquidation using or attempting to use them for any other purpose. Section 7 of the act declares that "a tax of five and a half mills on the dollar of the assessed value of all real and personal property in the state is hereby annually levied, and shall be collected for

the purpose of paying the interest and principal of the consolidated bonds herein authorized, and the revenue derived therefrom is hereby set apart and appropriated to that purpose and no other. And it shall be deemed a felony for the fiscal agent, or any officer of the state, or board of liquidators, to divert said fund from its legitimate channel as provided. * * * If there shall during any year be a surplus arising from said tax after paying all interest due in that year, such surplus shall be used for the purchase and retirement of bonds authorized by this act." Section 11 of the act declares, "that each provision of this act shall be and is hereby declared to be a contract between the state of Louisiana and each and every holder of the bonds issued under this act."

Amendments to the constitution of the state of Louisiana were proposed by the legislature on the 24th of January, 1874, and adopted at the general election in November, 1874. These declare, among other things, that "The issue of consolidated bonds authorized by the general assembly of the state, at its regular session in the year 1874, is hereby declared to create a valid contract between the state and each and every holder of said bonds which the state shall by no means and in no wise impair." The act of February 4, 1875, of which the bill complains as passed in defiance of the rights of complainant, constitutes the standing committees on lands and levees of the two houses of the legislature, a joint committee which is required to ascertain the amount due the Louisiana Levee Company for work done up to the first of October, 1873, after deducting all payments. The act further provides that it shall be the duty of the board of liquidation, upon the presentation to them of a report and certificate from said joint committee of the amount due the levee company, to issue and deliver to said company a sufficient number of the consolidated bonds of the state of Louisiana to cover the indebtedness of the state to said levee company, as ascertained as aforesaid. [Of all these provisions of the public law the court takes judicial notice.] [3]

The Louisiana Levee Company has filed a demurrer to the bill, based on two grounds: 1. That the bill did not show sufficient matter of equity to authorize a decree for the relief prayed for; and 2. That this court had no jurisdiction over the acts and doings of the board of liquidation, or to prevent or hinder the general assembly of the state to acknowledge and adjust a debt due the defendant, and that the said parties are exempt from the jurisdiction and authority of the court in the premises. The demurrer and the motion for the injunction were dependent the one upon the other, and were so considered and argued by counsel.

[3] [From 7 Chi. Leg. News, 251.]

T. J. Semmes, for complainant.
J. A. Campbell, for defendants.

WOODS, Circuit Judge: 1. It is apparent to the most careless reader, that by the passage of the so-called "Funding Act" the state of Louisiana undertook to make a contract with the holders of all valid outstanding bonds of the state and all valid warrants drawn previous to the passage of the act, who should accept its terms. What that contract was is not difficult to determine. On the one hand the holders of the outstanding bonds and warrants drawn before the passage of the act were to surrender their evidences of debt, and receive in full satisfaction therefor sixty cents on the dollar, to be paid in the consolidated bonds of the state authorized by this act. On her part the state agreed to issue consolidated bonds to the amount of fifteen millions of dollars, "or so much thereof as might be necessary," to take up the bonds and warrants at the rate just mentioned, and to pay the consolidated bonds over to the holders of the outstanding bonds and warrants, on the surrender of their evidences of debt to the board of liquidation. As an inducement to the holders of the bonds and warrants, to take sixty per cent. of their claims, not in cash, but in other evidences of debt, the state agreed that the consolidated bonds, which were to be paid to these creditors of the state, should be held and used by the board of liquidation, "only for the purpose of exchange as aforesaid," that "said bonds should be used for no other purpose or purposes than as authorized by the funding act, and that a tax of five and a half mills on the dollar should be levied annually on all the taxable property of the state, to pay the principal and interest on the consolidated bonds, and the revenue derived therefrom should be set apart for that purpose and no other." These are the express provisions of the act, and the act itself in terms declares that each provision shall be a contract between the state and each and every holder of consolidated bonds. Now what is it that the state, after entering into this solemn contract, proposes, by the act of February 20, 1875, to do? To take a portion of the consolidated bonds which were to be issued only to an amount sufficient to pay off the outstanding bonds and warrants at sixty cents on the dollar; which were authorized only for the purpose of being exchanged for bonds and warrants at that rate, which the state promised should be used for no other purpose or purposes, and any other use of which she declared shall be a felony; these bonds she proposes to give to a general creditor, dollar for dollar. This, it seems to me, would be a most palpable violation of a solemn public contract.

The suggestion that the legislature has reserved the right to use such of the consolidated bonds as may not be necessary to

take up the old bonds or warrants for the purpose of satisfying other creditors is a misconception of the funding act. In the first place, the contract is (section 1), that the state will only issue so many consolidated bonds as may be necessary to take up the outstanding bonds and warrants; (section 3) that they shall be exchanged for all valid outstanding bonds and valid warrants drawn previous to the passage of the act, at the rate of sixty cents in consolidated bonds for one dollar in outstanding bonds and warrants; and (section 5) that the consolidated bonds shall be used for no other purpose or purposes than as authorized by this act. Section 7 provides for a levy of a tax of five and a half mills to pay the consolidated bonds, principal and interest, and scrupulously devotes the proceeds of the tax to that purpose. Placing these provisions of the funding bill side by side, it is impossible to see where the state has reserved either an express or implied right to use the consolidated bonds to pay general creditors at par. The assumption appears to be at war, not only with the spirit and purpose of the funding act, but with its express declarations, and the attempt so to use the bonds is a flagrant breach of a contract, to which the honor and good faith of the state were pledged in the most explicit terms. An act of the general assembly which authorizes and directs such a violation of the contract of the state clearly impairs the obligation of the contract, and is therefore unconstitutional, null and void.

2. Has a holder of the consolidated bonds any remedy against this threatened breach of his contract? and if he has, what is it? "When a state becomes a party to a contract, the same rules of law are applicable to her as to private parties. When she or her representatives are properly brought into the forum of litigation, neither she nor they can assert any right or immunity as incident to her political sovereignty." Davis v. Gray, 16 Wall. [83 U. S.] 232; Curran v. Arkansas, 15 How. [56 U. S.] 308. It is objected to this bill, that in effect the state of Louisiana is a party, and that the 11th amendment to the constitution of the United States forbids such a suit. This objection is answered by a reference to the cases of Osborn v. Bank of U. S., 9 Wheat. [22 U. S.] 738, and Davis v. Gray, 16 Wall. [83 U. S.] 220. In the latter case the court says the cause of Osborn v. Bank, decided: (1) That a circuit court of the United States may enjoin a state officer from executing a state law in conflict with the constitution of the United States, when such execution will violate the rights of complainants; (2) that when the state cannot be made a party, the court may decree against the officers of the state, in all respects as if the state were a party to the record; and (3) in deciding who are parties to the suit, the court will not look beyond the record.

This authority seems to answer the objection made to the jurisdiction of the court. The case is this: The state of Louisiana has entered into a contract with certain of her creditors. Certain officers of the state, without authority of any valid law, but presuming to act under a law of the legislature, which is unconstitutional, and therefore void and no law, are about to violate the contract of the state and inflict irreparable injury upon the complainant. The authorities cited sustain the jurisdiction of the court, and justify it in interfering to prevent the mischief threatened.

It is insisted for the defense, that the attorney general of the United States is the only proper person to bring suit to have an act of the legislature declared unconstitutional and void. The authorities cited to sustain this proposition (Doolittle v. Supervisors, 18 N. Y. 155; Roosevelt v. Draper, 23 N. Y. 318; 1 Joyce, Prac. Inj. 746) concede that this may be done by a private person, when the act complained of involves some peculiar damage to his individual interests. This case falls clearly within this exception. My conviction is, therefore, that the demurrer to the bill is not well taken, and that the prayer for injunction pendente lite ought to be sustained. Ordered accordingly.

[NOTE. On appeal to the supreme court, the decree of the circuit court was affirmed in respect to prohibiting the funding of the debt of the Louisiana Levee Company in the consolidated bonds issued under the act of 1874, and reversed so far as it ruled that the said debts should not be liquidated by any other issue of bonds. 92 U. S. 531.]