SOUTHERN RY. CO. v. NORTH CAROLINA R. CO. et al.

(Circuit Court, W. D. North Carolina.   June 29, 1897.)

No. 130.

1. EQUITY JURISDICTION—ADEQUATE REMEDY AT LAW.

In a suit whose issues involve the setting aside of a recorded deed, the invalidity of which does not appear on its face, and must be established by matters dehors the deed, there is no such plain, adequate, and complete remedy at law as will oust the jurisdiction of the court.

2. SAME—SUIT TO ESTABLISH VALIDITY OF RAILROAD LEASE.

A bill in equity may be maintained by a railroad lessee against the lessor company and its controlling officers to establish the validity of the lease, as against threatened attacks thereon, and to enjoin such attacks by the defendants, where the lessee company is in possession, and the leased road forms a vital, connecting link, necessary to the integrity and prosperity of its railroad system.

3. JURISDICTION OF FEDERAL COURTS—STATE RAILROADS.

When a state becomes the owner of part of the stock in a railroad corporation, it lays down its character as a sovereign, and places itself on an equality with private stockholders; and hence the corporation and its directors and controlling officers, though in part appointed by the state, and specially representing its interests, may be sued in the federal courts, in respect to contracts entered into by the corporation, to the same extent as a corporation wholly owned and controlled by private individuals.

4. SAME—PARTIES.

Where a state owns stock in a railroad company, and the governor and attorney general are invested by law with the control of all suits in relation to the property of the state therein, they are proper parties defendant to a suit in equity to establish the validity of a lease of the property, and enjoin threatened attacks thereon.

5. RAILROAD COMPANIES—POWER TO LEASE—STATE AS STOCKHOLDER.

The North Carolina Railroad Company, in which the state of North Carolina owns three-fourths of the capital stock, and is represented by directors appointed by the governor, has full power, under the decision of the state courts (which are controlling in the federal courts), to execute a valid lease of its road and franchises for a term of 99 years.

This was a suit in equity by the Southern Railway Company against the North Carolina Railroad Company and others to establish the validity of a lease of the defendant's road, and to enjoin threatened attacks thereon.

Henry Crawford and John G. Carlisle, for plaintiff.

J. C. McRae and A. C. Avery, for the governor.

W. H. Day, for defendants.

J. E. Shepherd, for the attorney general.

J. S. Manning and Burwell Olmstead, for the old board.

SIMONTON, Circuit Judge.   The Southern Railway Company, complainant, became the purchaser, at sundry sales for foreclosure under order of this court, of the property of the Richmond & Danville Railroad Company.   Among other assets of the debtor company was a lease of the North Carolina Railroad, dated 11th September, 1871, for the term of 30 years.   This lease was purchased by, and became the property of, the complainant.   In August, 1895, as the result of negotiations between the Southern Railway Company and the North Carolina Railroad Company, a new lease was executed by the last-

named company to the Southern Railway Company, of all its property and franchises, for a new term of 99 years, upon an increased rental, and certain other provisions, more beneficial to the lessor than in the former lease; and by the provision of this new lease the termination of the former lease was anticipated, and it was declared to be at an end on 31st December, 1895, the new lease taking its place. The North Carolina Railroad Company is a corporation of the state of North Carolina. Three-fourths of its capital stock, represented by certificates of shares, are owned by the state. One-fourth of the capital stock is owned by private persons. Its affairs are managed by a board of directors. Of these, eight represent the state's interest, and they are appointed by the governor of the state, by and with the consent of the council, and are removable at pleasure by the same method. Four of the directors are elected by the private stockholders exclusively. All the directors appointed or elected represent and control the corporation, subject to the approval of the stockholders in meeting assembled. At such meeting the shares held by the state are represented by a proxy, appointed and removable in the same way as the directors on the part of the state are appointed and removed. This lease for 99 years, having been executed by the board of directors, by the unanimous vote of the entire body, and having been approved by the like vote of a meeting of stockholders, created a great deal of discussion in the state of North Carolina, on the hustings and elsewhere. Its legality and expediency both were challenged, and threats were made by men of influence and position to break the lease. Efforts were made to obtain action upon the part of the legislature to this end. And, although these efforts did not meet with success, it was manifest that there was a fixed determination to obtain, if possible, the end in view, by suit and other means. Under the laws of North Carolina the right to bring suits with regard to the property and claims of property of the state rests wholly with the governor and the attorney general. Under these circumstances the Southern Railway Company filed its bill in this court, setting forth substantially the facts stated; insisting on its rights under this lease; declaring it to be an important and essential link of its line of intercommunication between the states on the Atlantic Coast and the Gulf; praying that these be investigated, and that its rights and equities be adjudicated and established and put at rest. To this end, it made the North Carolina Railroad Company, the corporation, a defendant, as representative of its stockholders. It made also defendants Hon. D. L. Russell, the governor of North Carolina, and Hon. Zebulon Vance Walser, attorney general of North Carolina,—the officers selected and designated by the general assembly as in charge of all suits connected with the property and right of property of the state, the dominant stockholder in the corporation. It added the proxy of the state, authorized to cast its vote on all questions determining the action of the corporation. And it included as defendants S. B. Alexander and others, who were the president and directors under whose administration the lease was made. The bill prayed the establishment of the rights of complainant in its lease, and the injunction necessary to protect them therein. Upon the filing of the bill, recogniz-

ing the large interests and very grave questions involved,—questions, the solution of which, one way or other, could only be reached by exhaustive discussion and careful determination, requiring the aid of learned counsel,—the usual rule to show cause was issued, and the temporary restraining order was entered. Soon after these were done, his excellency the governor of North Carolina, in the exercise of powers claimed to be conferred on him and the council of state, which claim this court will not question, removed the directors theretofore acting in the corporation on the part of the state, as well as the proxy who had cast the vote of the state at stockholders' meetings, and appointed in the place of the directors Messrs. H. U. Butters, William Gilchrist, John S. Armstrong, John Graham, Virgil S. Lusk, Charles A. Cook, R. H. Norments, and A. W. Graham. These gentlemen last named came into this court, setting forth the fact of the removal of the state members on the old board, and their appointment in their place, and prayed leave to intervene and answer as parties. This was granted. Cause has been shown by all parties named in the original bill and in this amendment as defendants, the Honorable D. L. Russell and the Honorable Z. V. Walser, protesting against and denying the right of the court to compel them to answer in their official capacity, and putting in their responses as individuals.

Necessarily, the questions first to be met and decided are those affecting the jurisdiction of the court. Has it jurisdiction over the subject-matter of the suit? Are there questions arising or to arise in the effort to exercise jurisdiction, growing out of the character of the parties to the controversy, which will force it to stay its hand, and forbear any other interference in the suit? As the issues in this case involve the setting aside of a deed executed and recorded, whose invalidity does not appear on the face of the deed, and must be established by matters dehors the deed, there is not such a plain, adequate, and complete remedy at law as will oust the jurisdiction of this court. Rich v. Braxton, 158 U. S. 375, 15 Sup. Ct. 1006.

The main question is between the Southern Railway, a corporation created under the laws of Virginia, and the North Carolina Railroad Company, a corporation under the laws of North Carolina,—both of them private corporations. The Southern Railway Company claims to be the lessee of the North Carolina Railroad Company, for value, of all of its franchises and property, for 99 years; that the lease under which it holds was executed by the rightful authority, in the prescribed method, with full power; that, being thus clothed with vested rights under its lease, it finds these rights questioned, its property attacked, its enjoyment and use of it threatened, in influential quarters, and its peaceful administration of it put in extreme danger; and that these questions, attacks, threats, and damaging results originate within the lessor corporation itself, or with persons who have the power of controlling its action. In this age, and in this state, the validity of these attacks, the force of these threats, the real existence of this danger, and the solution of these questions, can only be had in the courts. The complainant thereupon comes into this court, in which, by reason of its citizenship, it has standing, and prays the aid of the court in its adjudication of these matters, invoking the protection of

the constitution of the United States. Can a bill of this character be maintained in a court of equity?

The jurisdiction to entertain applications for relief against attacks upon the title to property, either by suit or threats of suit, has been exercised by courts of equity, and sometimes by courts of law, from time immemorial. In equity this relief is afforded by bills quia timet and by bills of peace. Mr. Justice Story (Eq. Jur. § 825), commenting upon the first class of these bills, says that they are in close analogy to suits at common law of the nature mentioned by Lord Coke (Co. Litt. 100a, and note). Says Coke, "That there be six writs in law that may be maintained quia timet before any molestation, distress, or impleading." Of those, the sixth is styled "Ne Injuste Vexes." These are called "Brevia Anticipentia,"—writs of prevention. "Now," adds Mr. Story, "bills in equity, quia timet, answer precisely to this latter description. They are in the nature of writs of prevention,—to accomplish the ends of precautionary justice. They are ordinarily applied to prevent wrongs or anticipated mischiefs, and not merely to redress them when done. The party seeks the aid of a court of equity because he fears some future probable injury to his rights and interests, and not because an injury has occurred which requires any compensation or other relief." Courts of equity have constantly enlarged and liberalized this relief. And the legislation of many of the states has extended it yet further. Under the general principles of equity, the relief could not be afforded except to one in actual possession. The statutes of many of the states have dispensed with this requisite, and have enlarged the relief. The courts of the United States have, within their jurisdiction, recognized and enforced the relief thus given by state statutes. Holland v. Challen, 110 U. S. 20, 3 Sup. Ct. 495.

In the case at bar, the complainant alleges: That it is in possession and in actual enjoyment of a lease of the North Carolina Railroad for a long term. It first held as purchaser from the Richmond & Danville Railroad Company, which had been in quiet and uninterrupted possession as lessee of the leased premises since 1871. That, being in possession as alienee of the lease, a new lease was executed to it by the North Carolina Railroad Corporation, and that a part of the consideration of the new lease, or perhaps a necessary incident of its execution, was the extinguishment of the old lease. The possession, however, was continuous and uninterrupted. That this leased property is of the last importance, perhaps vitally important, to the existence, certainly to the prosperity, of its great system of interstate railway. That their right to the lease, their possession under it, the continuance of their enjoyment of it, are not only questioned, but are threatened with serious attack in high and influential quarters from without, and with denial of their right, with action to defeat it, and with suit to this end, within, the board of directors of the lessor corporation. That by reason of this action upon the part of those persons the complainant is threatened with irremediable disaster. Under these circumstances, if the complainant can maintain and prove that the lease under which it holds was executed to it by its lessor in the full exercise of its powers under its charter, in a proper and orderly way, according to the terms of its charter, and in good faith, without

fraud, covin, or malpractice, the case would present a strong and irresistible appeal for the exercise of the preventive remedies of this court. And this remedy must include an injunction against the North Carolina Railroad Company, its officers and agents, and all persons connected with it, from molesting, disturbing, or disputing the rights of the complainant in said lease. Compare Orton v. Smith, 18 How. 263. As between two private corporations, therefore, a bill of this nature can be entertained in this court, and, upon proper proof of the character indicated, relief could be given. How is the jurisdiction affected by the fact that the state of North Carolina is the owner of three-fourths of the capital stock in the lessor company? Under the charter of this company, the state of North Carolina, by virtue of its ownership of three-fourths of the stock, names 8 out of the 12 directors. The private stockholders owning the remaining fourth of the stock name four directors. But when they have been thus selected the board of directors meet as a body, and act as a unit. Their action is reviewable by a meeting of stockholders in which the stock of the state is represented by a proxy in her behalf, who sits and votes with the private stockholders, and forms with them one body. Each director in the one instance sits as the equal of every other director, by whomsoever appointed, and each stockholder acts on equal terms with every other stockholder. The state, as sovereign, does not meet with either body. When the state entered into this enterprise with private persons, she did not carry into it her functions of sovereignty, but stripped herself of them.

Whenever there has been waste or misapplication of corporate funds, or abuse of its interests, by officers or agents of a corporation; whenever contracts of a corporation are to be enforced, or claims against it resisted,—the action to secure its interests must be in the name of the corporation. It is only when the directors of the corporation neglect or refuse to protect its interests, or are in collusion with the wrongdoers, or are still under their control, that the stockholders, or any of them, can act. Robinson v. Smith, 3 Paige, 222; U. S. v. Union Pac. R. Co., Fed. Cas. No. 16,598; Heath v. Railway Co., Fed. Cas. No. 6,306. This rule is absolute. It was held in U. S. v. Union Pac. R. Co., just quoted (affirmed in 98 U. S. 569), that the United States, the sovereign, could not interfere in such a case, and that the relief was through the corporation, or, in exceptional cases, by the stockholder. In the case at bar the newly-appointed board of directors, made parties at their own request, who answer for themselves and for the corporation, do not come within any one of this category of objections, and give no reasons for the interposition of the stockholders. So far as respects the transactions of the corporation, its contracts, or its torts, the state exercises no power, enjoys no privilege, with regard to them, not derived from the charter, or differing in any way with the power or privilege enjoyed by any other stockholder. The corporation, within its chartered power, acts for and binds its stockholder, the state, equally and to the same extent as it acts for and binds every private stockholder. This has been repeatedly decided by the supreme court of the United States, and is established law. Bank of U. S. v. Planters' Bank, 9 Wheat. 904; Bank of Kentucky v. Wistar,

3 Pet. 431; Briscoe v. Bank, 11 Pet. 324; Darrington v. Bank, 13 How. 12; Davis v. Gray, 16 Wall. 221; Newton v. Commissioners, 100 U. S. 557; McComb v. Board, 2 Woods 48, Fed. Cas. No. 8,707. In Curran v. State of Arkansas, 15 How. 309, which was a suit against a corporation in which the state was the only stockholder, this doctrine was recognized and enforced. In that case the court says:

"By the charter of the bank, the state of Arkansas became its stockholder. But the bank was a distinct trading corporation, having a complete, separate existence, enabled to enter into valid contracts binding itself alone. The obligation of its contracts, the funds provided for their performance, and the equitable rights of its creditors were in no way affected by the fact that a sovereign state paid in its capital, and consequently became entitled to its profits."

The supreme court of North Carolina, in Marshall v. Railroad Co., 92 N. C. 322, declares:

"When the state is a stockholder in a railroad company, it is bound by the provisions of the charter, in the same manner as an individual stockholder. It has no advantage as a stockholder on account of its sovereignty; for by becoming such it lays down its character as a sovereign, and places itself on a footing of equality with the individual stockholders."

This being so, as every contract of the corporation not ultra vires, and not made in fraud, binds every stockholder, such contracts bind the stockholder, the state. As such contracts can be enforced against the corporation without making any individual stockholder a party, so they can be enforced against the corporation without making the state a party. And the present action can be maintained by complainants against the North Carolina Railroad Company, seeking to maintain, enforce, and protect its contract, and the cause will proceed, and the relief, if any, be given, without being in any way affected by the fact that among the stockholders of the corporation is the state of North Carolina. The state of North Carolina, having thus laid down her sovereignty when she entered into this enterprise with the private stockholders, so far as respects the transactions of the corporation, exercises no power and enjoys no privilege in respect to these transactions not derived from the charter. Her interest, therefore, in this contract which has been assaulted is not a sovereign interest, nor are her functions with regard to them functions of sovereignty. She stands exactly as any other stockholder would stand. The state as well as they is bound by the charter. And if this lease was made bona fide, without fraud of any kind, within the powers and according to the requirement of the charter, the action of the corporation will bind every stockholder. This is the question at issue in this case. And having assumed jurisdiction of the question, with all proper parties before it, the decision of this court, subject to review by an appellate court, is final. In this point of view, the governor of the state and the attorney general are proper parties to this case. In them alone is vested the right to bring suits in the name of the state, and it is alleged that the threats of suit and of the destruction of this contract come from one or both of them. Now, as the interests of the state, as a stockholder in this corporation, are not sovereign, if these two defendants seek to use the name of the state, as a stockholder, to set aside the act of the corporation, they are not discharging the functions of sovereignty, but are simply seeking to represent a stockholder

in a private corporation. And if the state, as shareholder, is bound by the terms of the charter, and this lease is within the powers of the charter, these two defendants cannot, in the name of the state, do what she herself, as stockholder, cannot do. To this extent only has this court jurisdiction over them. In the discharge of the executive functions devolving upon them under the constitution and laws of North Carolina, in all matters within the executive discretion, in the exercise of that control over all domestic corporations which belongs to the state as the visitor of them, in the issue of any of the great prerogative writs against a corporation, this court cannot—no court can—interfere. But in bringing such a suit as is threatened, to destroy this lease, these two defendants would represent, not the sovereign state of North Carolina, but only a shareholder in a private corporation, and in this respect they come within the jurisdiction of this court. They are high public officers. They are entitled to, and they have, the profound respect of the court. But no one in this country, however exalted in station or illustrious in character, is above the law. No state official can, in assuming the name of the state, shelter himself behind her sovereign immunity, if he attempt any act which the state herself, being a shareholder, cannot do. Pennoyer v. McConnaughy, 140 U. S. 1, 11 Sup. Ct. 699; Reagan v. Trust Co., 154 U. S. 362, 14 Sup. Ct. 1047.

It being clear that this case is within the jurisdiction of this court, its merits can be inquired into. The parties to the suit are the complainant and the defendants, the North Carolina Railroad Company, the board of directors who made the lease in question, and the board appointed by the governor upon the removal of the old board. This removal was effected after this suit was brought, but the new board have come in, and have fully presented their side of the case. Besides these, Hon. D. L. Russell, who is the governor of North Carolina, and Hon. Zebulon V. Walser, who is the attorney general of North Carolina, are parties. Besides questioning the jurisdiction of the court, the answers of Messrs. Russell and Walser, who protest that they answer only in their individual capacity, and of the new board of directors, make up clear and distinct issues upon the merits. If the jurisdiction of the court over the controversy is established, it can come to a clear and definite conclusion on these issues, and settle the controversy once for all. These issues are three in number. First. Was the North Carolina Railroad Company authorized by its charter to make the lease of its roadbed and franchises claimed by complainant? Second. Was this lease executed in conformity with the requirements of the charter? Third. Was it executed bona fide, without fraud, misrepresentation, or malpractice in any respect?

The first of these issues is a question of law. It involves the right of the North Carolina Railroad Company to farm out its franchise and property. It has no relation whatever to the policy or motives which led up to it. These belong probably to the third issue. As has been seen, a lease was executed of its property and franchises by the North Carolina Railroad Company to the Richmond & Danville Railroad Company in 1871, and for 30 years. The right of the lessor company to make such a lease has been before the supreme court of the state

in State v. Richmond & D. R. Co., 72 N. C. 634, 73 N. C. 529, and the validity of the lease was sustained. In Logan v. Railroad Co., 116 N. C. 940, 21 S. E. 959, the court says, "The question of the authority of the lessor company to farm out its franchise and property is no longer an open one." These decisions of the court of last resort of North Carolina as to the construction of a state statute bind the federal courts, apart from the very high authority of that court itself. Norton v. Shelby Co., 118 U. S. 425, 6 Sup. Ct. 1121; Union Bank v. Kansas City Bank, 136 U. S. 223, 10 Sup. Ct. 1013; Gormley v. Clark, 134 U. S. 338, 10 Sup. Ct. 554. And these decisions being of force, unquestioned, when this contract of lease was made, the law entered into, and was a part of, the contract, whose obligation cannot now be impaired. Olcott v. Supervisors, 16 Wall. 678; Douglass v. Pike Co., 101 U. S. 677; Darlington v. Jackson Co., Id. 688; Anderson v. Santa Anna Tp., 116 U. S. 356, 6 Sup. Ct. 413.

2. Was this lease executed in conformity with the requirements of the charter? On this point it has not been denied that the lease was executed after an unanimous vote of all of the directors, confirmed and approved by unanimous vote in a regular stockholders' meeting.

3. Was the lease executed bona fide, without fraud, covin, misrepresentation, or malpractice of any sort? This is a question wholly of fact. The charge is made by the defendants Messrs. Russell and Walser, and of the new board of directors, and in the answer of the lessor filed by them. Let this third issue be referred to Kerr Craige, Esq., of Rowan county, as special master, under the following instructions: That he take such testimony as may be produced before him touching all matters relating to, or incidental with, this question, holding reference at such time and place as may be most convenient; that upon this issue the defendants the new board of directors and Messrs. Russell and Walser have the affirmative of this issue, and the opening and reply in the testimony, and that they be allowed 60 days, if so long be necessary, within which to produce testimony, dating from the service of this order; that the complainant and the old board of directors have the negative of this issue, and that they be allowed 60 days, if so long be necessary, after the opposite party announce their evidence closed, and that 20 days, if so long be necessary, be allowed for reply, beginning when respondents announce that they have closed; and that said special master report the evidence with all convenient speed thereafter. In the meantime the restraining order heretofore issued is continued until further order.